UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JONATHAN BELLOWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-00077-TWP-DLP |
| ) | |
| DECATUR COUNTY SHERIFF'S ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on Defendant Decatur County Sheriff's Department's ("Defendant") Motion for Summary Judgment (Filing No. 41). Plaintiff Jonathan Bellows ("Bellows") brings this civil rights action pursuant to 42 U.S.C. § 1983 and Indiana tort law. He alleges that the Defendant acted negligently and violated his Fourteenth Amendment rights by maintaining policies and practices that were deliberately indifferent to his physical disability and that allowed inmates to use dangerous equipment that led to him falling and being injured. For the reasons explained in this Order, Defendant is entitled to summary judgment on all of Bellows' federal claims, while the state law negligence claim is dismissed for lack of jurisdiction.

## I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). A "material fact" is one that "might

affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. FACTUAL BACKGROUND

The following facts are drawn from the undisputed evidence or, where disputed, are set forth in the light most favorable to Bellows, the non-moving party.  The Defendant objects to several statements in Bellows' affidavit.  The Court will address these disputes as they arise in this summary of the facts.

Bellows was born without the muscle in his right leg, from his hip to his foot and this is a disability called venous vascular malformation. ([Filing No. 42-1 at 4](Filing No. 42-1 at 4).) He attests to this diagnosis in an affidavit and the Defendant objects to this testimony on the basis that Bellows is a lay person and cannot testify to his medical diagnosis. The Court agrees and will not rely on Bellows' testimony regarding his diagnosis; however, Bellows can describe his medical history (that he was

born without a muscle) and he may testify about his symptoms which include limping and difficulty walking on wet or slippery surfaces[1]. (Filing No. 61-3.)

### A. Bellows' Intake into Decatur County Jail

Bellows was transferred to the Decatur County Jail from the Shelby County Jail to serve the remainder of a prior sentence after cutting off his house arrest monitoring bracelet. (Filing No. 42-1 at 6-7). As part of the booking process into the Decatur County Jail, inmates are asked two sets of assessment questions: an initial booking assessment which asks about the inmate's prior offenses, and a medical assessment which asks the inmate about their medical history. (Filing No. 42-3 at 56.)

The parties dispute whether a medical assessment was performed on Bellows when he was booked into the Decatur County Jail. Officer Nicholas Beagle, ("Officer Beagle"), testified at his deposition that he performed a medical assessment by asking Bellows questions and recording the answers. *Id*. at 87-88; 124. Bellows testified at his October 8, 2019 deposition that whether he was taking drugs and whether he suffered from mental illness were some of the questions he was asked during the booking process. He also testified that he answered "no" to all the questions he was asked. (Filing No. 42-1 at 6.) Bellows submitted an affidavit dated May 4, 2020, with his response brief which states that he was only asked the two questions he mentioned at his deposition regarding drugs and mental illness and that he was not subjected to a full medical assessment. (Filing No. 61-3.) The Defendant objects to this portion of Bellows' affidavit. The Defendant argues that the affidavit's statement that only two questions were asked contradicts Bellows' deposition testimony that the two questions represented some of the questions he was asked. The

---

[1] A statement made for medical diagnosis or treatment is an exception to the rule against hearsay if the statement (A) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and **(B)** describes medical history; past or present symptoms or sensations; their inception; or their general cause. Federal Rules of Evidence 803(4).

Court agrees and strikes the following sentence from Bellows' affidavit: "During my intake with Decatur County Jail, the only medical questions I was asked by staff were whether I was coming off of drugs and whether I had any mental conditions, to which I answered in the negative."

However, Bellows' deposition testimony that he was asked some questions during the book in process does not equate to testimony that he was given a full medical assessment, was asked if he had a physical disability, or answered that question in the negative. Bellows attests in his affidavit that he was not asked whether he had a disability during his intake into the jail.[2]

Although it is disputed whether jail officials asked Bellows all the questions contained on the assessment form, a jail official completed the form and reported that Bellows said he did not have any physical disabilities. (Filing No. 42-3 at 55, 124; Filing No. 42-4.) Bellows testified that it was his experience that, if he answered "yes" to any of the medical assessment questions, he would have been given a date for the nurse to examine him. (Filing No. 42-1 at 6.)

The parties also dispute whether Bellows walks with a visible limp. He attests that he does, but two witnesses, Nurse Tara Hall ("Nurse Hall") and Officer Beagle testified that they did not notice Bellows limping. (Filing No. 61-3; Filing No. 42-3 at 55; Filing No. 42-5 at 12.) Because the Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor, it accepts that Bellows walks with a visible limp.

During the intake process, a jail official gives the inmate a pair of orange "slide" type sandals. (Filing No. 42-3 at 21.) Before these shoes are reissued to another inmate, they are washed and then inspected. *Id*. at 25-26. The Defendant's witnesses testified at deposition that

---

[2] The Defendant argues that Mr. Bellows cannot attest that he was not given a medical assessment when he designated that assessment as evidence with his response brief. The Court disagrees. Although Mr. Bellows designated the exhibit as evidence—after the Defendant designated it as evidence in support of its Motion for Summary Judgment—Mr. Bellows did not refer to the exhibit in his response brief. Designating an exhibit does not indicate that the party vouches for the truthfulness of what the exhibit contains.

although there is no policy on when to throw out shoes, they try to throw out worn shoes. *Id*. at 25-27; Filing No. 42-2 at 75-77. One witness testified that shoes are not thrown out if they are smooth on the bottom, but they are thrown out if they have a hole on the sole. (Filing No. 42-8 at 49-50.) Bellows testified that he has no knowledge of the Decatur County Sheriff's Department's policies or procedures. (Filing No. 42-1 at 63-64.)

Bellows attests that while he was in the Shelby County Jail, he purchased a pair of sandals and brought them with him to the Decatur County Jail. (Filing No. 42-1 at 7) . He told the Decatur County officer who provided him used sandals, and who has not been identified, that he was born with a birth defect and needed to have a pair of shoes that had traction so it was less likely that he would slip and fall and asked if he could use the sandals that he had purchased from the Shelby County Jail. The officer said the he was not allowed to let Bellows have the shoes he purchased from Shelby County because inmates are not allowed to bring things from other facilities to use, but that the officer would look to see what kind of shoes the Decatur County Jail had available. *Id*. at 7-8. The officer then brought a pair of sandals with no tread and advised Bellows that was all that was available. *Id*. at 8.

Generally, inmates are not allowed to bring items from other facilities into the Decatur County Jail. (Filing No. 42-3 at 20- 21.) There are a few exceptions to this rule, such as approved medical equipment. *Id*. at 31-32. If an inmate requests a special item for medical reasons, such as shoes, a nurse or a doctor determines if the request is medically necessary. *Id*.; Filing No. 42-2 at 124. A nurse is on staff at the Decatur County Jail Monday through Friday from 8:00 a.m. to 4:00 p.m. (Filing No. 42-3 at 28.) An inmate will receive a medical assessment upon intake if they request one or if they answer yes to one of the questions on the book-in medical questionnaire. (Filing No. 42-2 at 83.) Additionally, Commander Tony Blodgett ("Commander Blodgett")

testified that every inmate at the Decatur County Jail is provided a medical assessment within at least 14 days of arrival. *Id*. at 82.

Nurse Hall works for Quality Correctional Care ("QCC") as a registered nurse at the Decatur County Jail Monday through Friday. (Filing No. 42-5 at 6.) There was also an assigned doctor at that time, Dr. Christopher Stephenson. *Id*. at 11. Nurse Hall sees any patients that have any medical issues. As part of her duties, she also performs the 14-day medical assessments and sees any inmates during the intake process who answer "yes" on book-in questions. Nurse Hall testified that if an inmate answers "yes" to any of the questions on the book-in medical questionnaire, then someone from QCC would do an intake on that inmate. *Id*. at 7.

Special shoes have been allowed at the Decatur County jail when it has been determined that there was a medical need for them. (Filing No. 42-2 at 124.) Nurse Hall testified that if an inmate stated that they needed special shoes for a medical condition but did not have a doctor's prescription or the shoes, that person would still be evaluated by the medical staff independently. She has approved special or orthopedic shoes in the past. (Filing No. 42-5 at 9-10.)

Officer Beagle, the officer who booked Bellows into the jail, testified that Bellows never told him that he needed his shoes from Shelby County for a medical reason and if he would have told him that, Officer Beagle would have contacted the nurse. (Filing No. 42-3 at 125.) Bellows did not have a doctor's note or a recommendation stating that he needed a certain type of sandals or shoe. (Filing No. 42-1 at 8.) Bellows' condition did not require him to use a cane or a crutch and had not caused him to fall prior to incident at the jail. *Id*. at 4.

Bellows never requested to speak to a jail nurse about his condition although there was a nurse available. *Id*. at 19. He never followed up with any guards about being issued a different pair of sandals and never inquired as to whether he could purchase a newer pair of sandals from commissary. *Id*. at 9.

Jail inmates have access to the forms necessary to make medical and healthcare requests. If an inmate has questions or wants to speak with medical personnel about anything, then that inmate would fill out a request and the nurse would see them. (Filing No. 42-5 at 26.) Prior to his fall on March 21, 2018, Bellows only turned in one request to see the nurse—he complained of a runny nose on March 8, 2018. *Id*. at 38; Filing No. 42-7. However, when the nurse went to visit him in response to that request, Bellows refused to be seen. *Id*. Nurse Hall also testified that Bellows refused his 14-day assessment. (Filing No. 42-5 at 60-61; Filing No. 42-6.)

Nurse Hall recalls seeing Bellows wearing shorts while she was passing out medication in his cell block. She asked him what he did to his leg because it looked like it had a scar on it. He told her that he had an abnormality with his leg, but she testified that he never had any complaints about it. (Filing No. 42-5 at 12-14.) Nurse Hall testified that he did not tell her he had any special needs because of his condition. *Id*. at 58. If Bellows was wearing long pants, she would not have been able to tell there was anything different about his leg. *Id*. at 57.

**B.    Bellows fall in the jail**

Jail staff do not maintain and clean inmate living and common areas. (Filing No. 42-2 at 44.) Inmates are given cleaning supplies, such as a mop and floor cleaner, each day. (Filing No. 42-1 at 11.)

On March 21, 2018, Bellows suffered fall. That day, he and three other inmates were working out in the back of the cell block dorm, taking turns doing sets of push-ups, pullups, and lifting a weight bag. A weight bag is a shirt stitched at the bottom and filled with plastic water bottles. He had worked out in that same area before with the same inmates and this was their basic routine. (Filing No. 42-1 at 9-10.) Because he has trouble walking, Bellows is extra careful around areas where there is water. *Id*. at 10. Prior to his fall, he had been working out for about a half an

7

hour and there was no water around the area or in the area where he was working out. *Id*. at 9, 10. Bellows sat down at a nearby table to rest for a minute while waiting for his next turn to use the weight bag. *Id*. at 10. He and others had walked back and forth in that area with no problems. *Id*. at 12. He then "got up, took a couple of steps and stepped in water, and when I did, I slipped and fell." *Id*. at 9.

Somewhere in between sitting down to take a break and getting back up to do his next set, there had been water spilled on the floor. However, there was previously no water around that area or in the area where he was working out. Although he does not remember the floor feeling wet or his clothes being wet, he assumes that he slipped on water from the weight bag or a cooler in the room. *Id*. at 11. Bellows was not aware if the water bottles were leaking. *Id*. at 10.

After Bellows fell, inmates signaled for the correctional officers. A correctional officer arrived, noticed that Bellows' leg was broken, and called the nurse. *Id*. at 13. Nurse Hall arrived. Bellows asked not to be moved and Nurse Hall advised everyone not to move him because she could tell his leg was fractured. She told Commander Blodgett to call EMS and EMS was called. ([Filing No. 42-5 at 16](), 18.) A nurse waited with Bellows until EMS arrived and took him to the hospital. ([Filing No. 42-1 at 14]().)

The Court has reviewed video evidence of the incident which shows several inmates exercising in a corner of the block. ([Filing No. 43](),[Filing No. 63]().) In the video, Bellows gets up from the table, slips, and falls. Correctional officers arrive within two minutes. An inmate then drags a cooler from across the room to near where Bellows is lying. Approximately two minutes later, the nurse and additional officers arrive with a wheelchair. The nurse appears to assess Bellows. Approximately one minute later EMS arrives and removes Bellows from the scene.

8

### III.  DISCUSSION

The Complaint in this action contains two counts: a negligence claim brought under Indiana state law and a policy claim pursuant to 42 U.S.C. § 1983; the latter alleges that the Defendant maintained policies or practices that resulted in Bellows' injuries.  Specifically, Bellows alleges that the Defendant maintained policies or practices that: 1) failed to provide inmates with appropriate footwear, 2) permitted inmates to use dangerous equipment, 3) failed to properly accommodate inmates' medical conditions, 4) failed to properly supervise and train officers in the provision of reasonable medical care, and 5) perpetuated a culture of deliberate indifference. ([Filing No. 1 at 4](Filing No. 1 at 4).)  The Court will first address Bellows' policy claims.

**A.    Policy and Practice Claim**

At the time of the alleged events, Bellows was a pretrial detainee.  Accordingly, the conditions of his confinement are evaluated under standards established by the Fourteenth Amendment's Due Process Clause.[3]  *See Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015); *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018).  A "standard of objective reasonableness, and not deliberate indifference, governs claims under the Fourteenth Amendment's Due Process Clause for inadequate medical care provided to pretrial detainees." *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda*).

"[M]unicipal governments [including counties] cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees.  They can, however, be held liable for unconstitutional municipal policies or customs." *Simpson v. Brown County*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)).

---

[3]. Bellows mentions the Fourth Amendment, but it is the Fourteenth Amendment that supplies protections to him as a pretrial detainee.

To maintain a claim against the Defendant, Bellows must establish that he suffered a constitutional deprivation as the result of an express policy or custom of the Defendant. Bellows must show that the Defendant has: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a practice that is so wide-spread that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Estate of Moreland v. Dieter*, 395 F.3d 747, 758-759 (7th Cir. 2004). In addition, the failure to make a policy itself may be actionable conduct. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017).

"The critical question under *Monell* … is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson*, 849 F.3d at 379 (citing *Monell,* 436 U.S. 658 (1978) and *Los Angeles Cnty. v. Humphries,* 562 U.S. 29 (2010)). "Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice." *Id.*

Bellows testified that he has no knowledge of the Decatur County Sheriff's Department's policies or procedures. ([Filing No. 42-1 at 63-64](#).) Taking Bellow's version of the facts as true, an unidentified jail officer failed to follow up on his request to wear his own shoes and provided Bellows with shoes that were worn out and too large for him. He later slipped—possibly on water that leaked from a weight bag that he had been using for exercise—and injured his leg. The Court will now address each of his policy claims in turn.

### 1.     Shoes

Other than his own experience of receiving worn out shoes, Bellows has presented no evidence to dispute the testimony of jail officers that their practice was to discard worn out shoes.

10

One officer stated that he did not throw out shoes unless they had a hole, (Filing No. 42-8 at 49-50), but other officers testified that jail practice was to throw out shoes when the tread was worn down, (Filing No. 42-3 at 25-27; Filing No. 42-2 at 75-77). Other than his experience of receiving worn out shoes, Bellows has presented no evidence to dispute the testimony of jail officers that their practice was to throw out worn out shoes. A single occurrence, as alleged here, is insufficient evidence of a widespread practice. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Perhaps the unidentified officer who supplied worn out shoes to Bellows could be personally liable to Bellows. But that officer is not a defendant and the Decatur County Sheriff's Department cannot be held liable for that officer's actions in the absence of a policy or practice. *Simpson*, 860 F.3d at 1005-6 (there is no *respondeat superior* liability for municipal governments in § 1983 actions).

Although a pair of worn shoes evidently slipped through the review process, the Defendant's practice of trying to throw out worn shoes rather than placing them back into circulation was objectively reasonable. The Defendant is entitled to summary judgment on this aspect of Bellows' policy claim.

### 2. **Permitted Use of Dangerous Equipment**

Bellows testified that he and other inmates routinely used weight bags for exercise which they constructed from water bottles and t-shirts. (Filing No. 42-1 at 9, 10.) He contends that the weight bags are dangerous—presumably because they may leak and cause someone to slip and fall—and that the Defendant's practice of allowing inmates to use them caused his injuries. Although this case is governed an objective reasonableness standard under the Fourteenth Amendment, caselaw addressing similar arguments from convicted prisoners under the Eighth

11

Amendment is instructive here. "[P]risoner slip-and-fall claims almost never serve as the predicate for constitutional violations as a matter of law." *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014). "Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014).

The outcome is the same under an objective reasonableness standard. It is not objectively unreasonable for Defendant to have a practice of allowing inmates to work out with weight bags that could cause slippery floors. The evidence in this case is that Bellows did not notice the weight bag leaking or any water on the floor from any source prior to him slipping. The Court has reviewed available video evidence of the incident. It is not clear that any water had accumulated on the floor. Although the video might be helpful regarding Bellow's negligence claim, it is not determinative of Defendant's practices. Assuming that Bellows did slip on water that had recently leaked from a weight bag, Defendant's practice of allowing the use of weight bags made with water bottles was not objectively unreasonable and therefore did not violate the Constitution.

### 3. Medical Care Policies and Practices

Bellows contends that it was the Defendant's policy or practice to fail to properly accommodate inmates' medical conditions and supervise and train officers in the provision of reasonable medical care. He argues that the Defendant's practices perpetuated a culture of deliberate indifference. As stated above, because Bellows was a pretrial detainee, his claims are brought under the Fourteenth Amendment rather than under the Eighth Amendment. Therefore, a standard of objective unreasonableness applies rather than a standard of deliberate indifference.

Bellows has presented no evidence that he ever submitted a healthcare request for different shoes or made such a request to anyone other than the single officer he spoke to when first

receiving shoes during the intake process. He provides no evidence disputing that he refused to be seen by the nurse for his 14-day medical assessment. Other than Bellows' experience with the intake officer who failed to ask him whether he was disabled and another unknown officer who failed to follow up on Bellows' request to use his own shoes, Bellows has presented no evidence to dispute the testimony of jail officers that their practice was to complete a medical assessment for each incoming inmate, to follow-up on any requests for medical treatment, and to conduct a medical assessment within 14 days. As stated above, a single occurrence is insufficient evidence of a widespread practice. *Thomas*, 604 F.3d at 303. And while the individual officers may be liable if they violated Bellows' constitutional rights, the Decatur County Sheriff's Department cannot be held liable for its employees' actions absent a policy or practice. *Simpson*, 860 F.3d at 1005-6.

Bellows testified that he walks with a limp. None of the Defendant's witnesses ever noticed Bellows' limp, but assuming he did walk with a limp, this fact does not change the outcome of his policy or practice claim against the Defendant. The Constitution does not require that jail officials provide special shoes whenever they notice an inmate limping. It is not objectively unreasonable for the Defendant to rely on inmates to request accommodations they require by submitting a healthcare request form or by asking for accommodations during their 14-day medical assessment. There is no evidence that Bellows pursued either of these available routes or that he was unable to do so.

Bellows does not assert that the Defendant maintained an express policy of denying accommodations to disabled inmates and his evidence that the Defendant had a custom or practice of denying accommodations is insufficient because it is based solely on his experience. Nor does Bellows allege that either the intake officer or the unidentified officer who provided him shoes had

13

final policy-making authority. *Estate of Moreland v. Dieter*, 395 F.3d 747, 758-759 (7th Cir. 2004). The undisputed facts demonstrate that Bellows' policy and practice claim must fail and that the Defendant is entitled to summary judgment.

**B.      Negligence Claim**

The Court will next address Bellows state law claim for negligence. The Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

The usual practice shall be followed in this instance. "A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). The duty of a custodian of inmates is "to take reasonable steps under the circumstances for the life, health, and safety of the detainee." *Sauders v. Cnty. of Steuben*, 693 N.E.2d 16, 18 (Ind .1998). Bellows contends that the Defendant breached its duty to reasonably ensure his health and safety when it provided him inadequate shoes and allowed him to use weight bags. It appears that there are disputed issues of material fact regarding Bellows' negligence claim. However, it is not clear how this claim should be decided based on the record before the Court.

14

For example, the issue of whether Bellows filed the proper notice under the Indiana Tort Claims Act, see Indiana Code § 34-4-16.5-7 is unresolved. Under these circumstances, the Court declines to exercise supplemental jurisdiction over the state law negligence claim brought against the Defendant. The statute of limitations will not have run on Bellows' negligence claim. *See* 28 U.S.C. § 1367(d). Substantial judicial resources have not yet been committed to resolving this claim, so sending the case to a state court will not cause a substantial duplication of effort. Accordingly, the Court will relinquish federal jurisdiction over the negligence claim against the Defendant.

## IV. CONCLUSION

The Defendant's Motion for Summary Judgment, ([Filing No. 41](#)), is **GRANTED** on the federal policy and practice claim under the Fourteenth Amendment. The state law negligence claim is **DISMISSED, without prejudice,** for lack of jurisdiction. Plaintiff may file his negligence claim in state court. Final judgment in accordance with this Order shall issue in a separate filing.

**SO ORDERED.**

Date: 7/24/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Jack A. Tandy
TANDY LAW, LLC
jack@jacktandylaw.com

Aimee Rivera Cole
TRAVELERS STAFF COUNSEL OFFICE (Indianapolis)
arcole@travelers.com

Paul Thomas Belch
TRAVELERS STAFF COUNSEL
pbelch@travelers.com